## POST v. NEW BOSTON NAT. BANK.
### (No. 3556.)

Court of Civil Appeals of Texas. Texarkana. June 7, 1928.

Rehearing Denied June 21, 1928.

O. B. Pirkey, of New Boston, for appellant.
Johnson & Waters, of New Boston, for appellee.

HODGES, J. In December, 1917, C. E. Connell sold to the appellant, J. S. Post, a tract of 60 acres of land, and took as a part of the consideration two notes for $400 each. The first of these notes was due January 1, 1919, and the other one year later. The deed from Connell to Post described the land as a part of the J. N. Stewart survey, bounded on the east by the J. P. Wright survey and on the west by the Oliver Cook tract. The notes contained the following description:

"This note is given in part payment for a certain lot or parcel of land situated in Bowie county, Tex., and being sixty acres out of the J. N. Stewart survey and fully described by metes and bounds in the deed of that date executed by Connell conveying the land to Post."

Soon after their execution, the notes were assigned for a valuable consideration to the New Boston National Bank, the appellee in this appeal. In December, 1922, Post and the bank entered into an extension agreement whereby the notes were renewed for the sum of $1,289 and made payable to the bank one year from that date. The increased amount probably included the unpaid interest which had accumulated. The renewal note contains the same description of the land as that appearing in the originals. This suit was filed by the bank against Post to recover the amount of that debt and to foreclose a lien on the land sold by Connell to Post. Post answered by demurrers and a general denial. In addition to that answer, he specially pleaded that he was the owner of a tract of 60 acres of land situated in the J. P. Wright survey, which he describes more particularly by metes and bounds. He claimed that land as his homestead, and asserted a title by limitation under a deed and payment of taxes for a period of more than five years. He alleged, in substance, that the bank was claiming a lien against that land, and asked for a judgment removing the cloud and quieting his title. In the trial below no effort was made by him to defeat a personal judgment for the amount of the debt. The contest involved only the right of the bank to have a foreclosure of a lien upon the land to which Post claimed title. That right was denied by Post upon the ground that the land against which the plaintiff was asserting a lien is a different tract from that described in the deed to him from Connell and in the notes executed for the purchase money.

In a trial before the court a judgment was rendered for the amount of the debt, interest, and attorney's fees, which also directed a foreclosure of the vendor's lien on the land which Post now claims was his homestead. No attack is made in this appeal on the personal judgment rendered in favor of the bank against Post. A reversal of the judgment foreclosing the lien is sought upon the ground that it is not supported by the evidence.

Appellant contends that the evidence conclusively shows that the land was in the Wright survey and therefore was not covered

by the deed to him from C. E. Connell, or by the notes which he executed to Connell and later renewed to the bank.

The controlling question is: Did the bank have a lien on the particular tract of land involved in this suit? As above stated, the deed and notes described the land as being a part of the Stewart survey, while according to recent surveys made upon the ground it appears to be a part of the Wright survey. The evidence shows that the Stewart survey was located in the early part of 1842 and contained 640 acres. A few months later the Wright survey, containing less than 200 acres, was located adjacent to and east of the Stewart. In the field notes of the Wright the east line of the Stewart is called for as the west line of the Wright. At the terminals of that line are the corners common to both surveys. The error, if any, in Connell's deed to Post, resulted from a mistake as to the true location of that boundary line. In the original field notes marked trees were called for at the corners, but at the time of the trial none of those trees could be found on the ground. According to the testimony of two surveyors who undertook to locate the line by course and distance, the land described in Connell's deed to Post is in the Wright survey. According to other testimony, which is uncontradicted, an old fence row farther east and forming the west boundary line of the J. W. Connell tract of 80 acres had been recognized for more than 20 years as the east boundary line of the Stewart. If the latter be the true line between the two surveys, the tract in controversy was correctly described as being in the Stewart. The court found that the old fence row above referred to was the true line, and based his conclusion upon the fact that it had been so recognized by the interested parties for more than 20 years. It is here contended that the evidence showing a mere recognition of that old line as the boundary is not sufficient to overcome undisputed proof of a different line located by course and distance according to the original field notes.

Whatever error there may have been in the description contained in the deed from Connell to Post was the result of a mistake; but there was no mistake by the parties as to the identity of the land which Connell intended to convey, and which Post intended to purchase. The evidence shows that the land was partially inclosed by a fence, and a part of it was in cultivation at the time the sale was made; and that the lines and corners were pointed out by Connell to Post. Both of them then believed that the land was in the Stewart survey. It had been so described in the deed by which Connell acquired it. No other party was then, or is now, asserting any claim to the land adversely to Post or Connell. The only other person who could at that time have made such a claim was J. W. Connell, the father of Post's grantor. J. W. Connell, however, recognized the old fence row as the true east boundary of the Stewart survey, and as his west boundary line, thereby disclaiming any right to the land in controversy, although it may have been covered by his deed.

Post testified that about five or six months after he purchased the land he learned that it was in the Wright survey, and not in the Stewart. Some time later the J. W. Connell tract was acquired by Post's father-in-law, Morris. In July, 1918, Post, in order to obtain a good title to the land, secured a deed from Morris, which recited a consideration of one dollar paid. It is apparently conceded that Post now has a good title to the land, regardless of any error in the deed from Connell, his vendor. He does not in this appeal deny personal liability on the notes that were given for the purchase price of the land. If the notes by mistake misdescribed the land, the parties had a right to correct that mistake. According to Post's testimony, after his discovery of the mistake he made no complaint nor effort to have it corrected; but with notice of the mistake he renewed the notes then held by the bank.

The vendor's lien in this instance arose from the transaction between Connell and Post, the sale and purchase of the land with which they were dealing. The notes were mere written evidence of the lien. That the law implies a lien for the unpaid purchase price of land is too well settled to require the citation of authorities.

The fact that the writing misdescribed the land did not destroy the lien which arose as an incident to the contract of sale. The mistake, if any, was mutual; and the right to have it corrected could be exercised in a proceeding for the enforcement of the lien. As a part of its original petition the bank alleged:

"Plaintiff alleges said land to be part of the J. N. Stewart H. R. survey and to be described by metes and bounds in the deed aforesaid, to which reference is made above; and plaintiff further alleges that if it be mistaken in its allegation that said land is a part of the said J. N. Stewart H. R. survey, and that the description set out in said deed is correct, the plaintiff pleads in the alternative and further shows to the court that said tract of land is commonly known as the C. E. Connell place, and that it is the same tract or body of land conveyed by W. J. Kent et al. to C. W. Corder by deed dated August 3, 1912, and recorded in Vol. 62, pages 601 and 602, of the deed records of Bowie county, Tex.; and that it is the same tract or body of land conveyed by C. W. Corder to C. E. Connell, by deed dated —— day of ——, and of record in Vol. 77, page 486, of the deed records of Bowie county, Tex.; and that it is the same tract or body of land purchased by the said J. D. Post from the said C. E. Connell and wife, Nannie I. Connell, and by themselves, the said C. E. Connell and wife Nannie I. Connell, sold unto the said J. S. Post, and that it is the same tract or body of land intended to be and was conveyed by the said C. E. Connell

and wife Nannie I. Connell unto the said J. S. Post by their deed above mentioned, and is the same land they put J. S. Post into possession of by said conveyance, and for a part of the purchase price thereof the notes above described were executed regardless of, whether or not the same is located in the J. N. Stewart H. R. survey, or whether or not the description by metes and bounds set out in said deed aforesaid are accurate or not; and the plaintiff prays the court that should the description of said land as set out in said deeds above referred to and pleaded be incorrect and insufficient, that the plaintiff have an order of this court authorizing and directing said land to be surveyed by the surveyor of Bowie county, Tex., and the description and field notes thereof be turned into court in this cause and made a part of plaintiff's pleadings, and for judgment thereon correcting the description of the land."

Under that pleading the court had authority to foreclose the lien against the land which actually formed the subject-matter of the contract. The evidence shows that prior to the sale to Post, Connell was in possession of the land under a claim of ownership, and for the consideration stated in the notes he agreed to part with his interest and to deliver possession to Post. When that was done each acted in good faith, and each believed that a good title was passing with the delivery of the deed.

There is no plea of failure of title, or failure of consideration. Post had for a nominal consideration secured a deed which perfects his title. If he is personally liable for the purchase money, the land is subject to the lien.

The judgment is affirmed.

LEVY, J., absent.